UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff.<br><br>v.<br><br>AZIZ HASSAN BEY, a/k/a "CHAUNCEY HOOKS,"<br>LETEZ OSIRIS BEY, a/k/a "DEVONNE ROBINSON,"<br>MINISTER ZAKAR ALI, a/k/a "ANTHONY ALLEN," and<br>DIVINE-SEVEN EL, a/k/a "MARK STEVENS," a/k/a "MARK NESBITT,"<br>        Defendants. | **SEALED**<br><br>Case No. 22-CR-<br>[18 U.S.C. §§ 1341, 1343, 1349, 1957, 2(a) and 2(b)] |

## INDICTMENT

**THE GRAND JURY CHARGES THAT:**

### BACKGROUND

At times material to this Indictment:

*The Defendants and Relevant Entity*

1. Defendant Aziz Hassan Bey, also known as "Chauncey Hooks" (A. BEY), resided in the State and Eastern District of Wisconsin.

2. Defendant Letez Osiris Bey, also known as "Devonne Robinson" (L. BEY), and defendant Minister Zakar Ali, also known as "Anthony T. Allen" (ALI), resided in Illinois.

3. Defendant Divine-Seven El, also known as "Mark Stevens" and "Mark Nesbitt" (EL), resided in Maryland and Florida.

4. On or about August 23, 2018, the Consulate of Al Moroc (Consulate) was incorporated in the State of Wisconsin. A. BEY was its director and registered agent, and one of its business addresses was on W. Marine Drive in Milwaukee, Wisconsin.

5. The Consulate was also incorporated in several other states. ALI, L. BEY, and EL were listed as its resident agent or officers in other states.

6. The Consulate is not registered with the U.S. Department of State and not recognized as a foreign mission in the United States.

### *Paycheck Protection Program and Economic Injury Disaster Loan Program*

7. The Coronavirus Aid, Relief, and Economic Security (CARES) Act was a federal law enacted in or around March 2020 to provide emergency financial assistance to the millions suffering the economic effects caused by the COVID-19 pandemic. The CARES Act authorized forgivable loans to small businesses through the Paycheck Protection Program (PPP) and Economic Injury Disaster Loan (EIDL) loans to eligible small businesses experiencing substantial financial disruption due to COVID-19.

8. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The application required the business to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the application, the business had to state, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the business was eligible to receive under the PPP. In addition, the business had to provide documentation showing its payroll expenses.

9. A business's application was received and processed by a private lender. If an application was approved, the lender funded the loan using its own money. The business was required to use the PPP loan proceeds on payroll, mortgage interest, lease, and utility payments.

10. To obtain an EIDL loan, a qualifying business was required to submit an application to the United States Small Business Administration (SBA) and provide information such as its number of employees, gross revenues, and cost of goods sold for the 12-month period preceding the disaster. The applicant was required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

11. EIDL loan applications were submitted directly to and processed by the SBA. The amount of the loan was determined based, in part, on the information provided by the applicant. Any funds issued under an EIDL loan were issued directly by the SBA. The business was required to use the EIDL loan proceeds on payroll, sick leave, production costs, and business obligations such as debts, rent, and mortgage payments.

*Unemployment Insurance*

12. Unemployment Insurance (UI) was a joint state and federal program that provided temporary monetary benefits to eligible beneficiaries. Beginning in or around March 2020, in response to the COVID-19 pandemic, several federal programs expanded UI eligibility and increased UI benefits.

13. State unemployment systems and benefits were administered by the State Workforce Agency (SWA), such as the Wisconsin Department of Workforce Development, Georgia Department of Labor (GDOL), and California Employment Development Department.

14. Individuals seeking UI benefits submitted online applications. Applicants had to answer specific questions to be eligible to receive benefits, including their name, Social Security Number, and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19-related reason for being unemployed, partially employed, or unable to work. The SWAs relied upon the information in the application to determine eligibility. Once an application

3

was approved, the SWAs typically distributed state and federal UI benefits electronically to an account or a prepaid debit card, which claimants could use to withdraw funds and make purchases.

### *Bank Accounts Controlled by the Defendants*

15. Banks 1, 2, 3, 4, and 5 were financial institutions insured by the Federal Deposit Insurance Corporation.

16. Defendant A. BEY controlled and was a signatory on an account ending in x9270 at Bank 1 and an account ending in x2903 at Bank 2.

17. Defendant L. BEY controlled and was a signatory on an account ending in x4808 at Bank 3 in the name of the Consulate and an account ending in x9860 at Bank 4.

18. Defendant ALI controlled and was a signatory on an account ending in x2572 at Bank 1.

19. Defendant EL controlled and was a signatory on accounts ending in x4022, x0064, x2517, and x0491 at Bank 3, and an account ending in x8491 at Bank 5.

### *Lenders*

20. Lender 1 was a federally insured financial institution and member of the Federal Home Loan Bank System headquartered in Skokie, Illinois. Lender 1 was an approved SBA lender and participated as a PPP lender to small businesses.

21. Lender 2 was a federally insured financial institution and member of the Federal Home Loan Bank System headquartered in Atlanta, Georgia. Lender 2 was an approved SBA lender and participated as a PPP lender to small businesses.

22. Lender 3 was a federally insured financial institution and member of the Federal Home Loan Bank System headquartered in Pittsburgh, Pennsylvania.

23. Lender 4 was a federally insured financial institution and member of the Federal Home Loan Bank System headquartered in Mesa, Arizona.

# COUNT ONE
*Conspiracy to Commit Wire Fraud*

24. Paragraphs 1 through 23 are realleged and incorporated here.

25. Beginning in at least June 2020 and continuing through at least July 2021, in the State and Eastern District of Wisconsin and elsewhere,

> AZIZ HASSAN BEY, a/k/a "CHAUNCEY HOOKS,"
> LETEZ OSIRIS BEY, a/k/a "DEVONNE ROBINSON,"
> MINISTER ZAKAR ALI, a/k/a "ANTHONY ALLEN," and
> DIVINE-SEVEN EL, a/k/a "MARK STEVENS" a/k/a "MARK NESBITT,"

knowingly conspired with each other, and with others known and unknown to the Grand Jury, to devise and participate in a scheme to defraud and obtain money and property from the SBA and from Lenders 1 and 2 by means of materially false and fraudulent pretenses and representations, using and causing the use of interstate wire communications, in violation of Title 18, United States Code, Section 1343, as further described below.

### *Purpose of the Conspiracy*

26. It was the purpose of the conspiracy for the defendants to unlawfully enrich themselves by fraudulently obtaining EIDL loans from the SBA and PPP loans from private lenders under false and misleading pretenses.

### *Manner and Means of the Conspiracy*

27. Beginning in or about June 2020, through at least in or around July 2021, the defendants A. BEY, L. BEY, ALI, EL, and others knowingly submitted and caused to be submitted numerous EIDL and PPP loan applications that contained materially false representations, including: (1) false representations that the applicant entities were functional and operational businesses, (2) false promises to use the loan proceeds on covered business expenses, and (3) false figures of the businesses' number of employees, monthly payroll expenses, gross revenues, and

5

cost of goods sold. These false representations were capable of influencing and did influence the SBA's and lenders' decisions to provide COVID relief funds.

28. As part of the scheme, the defendants provided as supporting documentation financial documents, including bank statements and Internal Revenue Service (IRS) forms, which included false income, revenue, and expenses.

29. As part of the scheme, the defendants falsely certified on PPP loan applications that the loan fund proceeds would be used on covered business expenses, such as to retain workers and cover payroll expenses and to make mortgage interest, lease, and utility payments. However, the defendants intended to and in fact used loan fund proceeds impermissibly for their personal benefit and shared proceeds among each other.

30. As part of the scheme, the defendants attempted to fraudulently obtain several million dollars in EIDL funds and hundreds of thousands of dollars in PPP funds.

### *Acts in Furtherance of the Conspiracy*

31. In furtherance of the conspiracy and to achieve its objectives, one or more members of the conspiracy committed the following acts in furtherance, among others, in the Eastern District of Wisconsin and elsewhere:

a. A. BEY, ALI, and EL submitted and caused to be submitted false and fraudulent EIDL applications for which they received funds from the SBA:

| Business Name | Business Type | Business Owner | Date Funds Received | Approx. Amount |
|---|---|---|---|---|
| Zakar Ali (Zakar Farms) | Agricultural | ALI | 6/15/20 | $10,000 |
| Divine-Seven El | Business Services | EL | 6/29/20 | $81,500 |
| Aziz H. Bey | Business Services | A. BEY | 7/7/20 | $108,500 |
| Bellingham Group Inc. | Real Estate Development | EL | 7/24/20 | $149,900 |
| Divine-Seven El | Printing/Graphic Design | EL | 7/28/20 | $149,900 |
| Aziz Hassan Bey | Printing/Graphic Design | A. BEY | 8/10/20 | $125,100 |
| Centralia Ventures Corp. | Printing/Graphic Design | EL | 8/11/20 | $149,900 |

6

b. A. BEY, L. BEY, ALI, and EL submitted and caused to be submitted false and fraudulent PPP applications for which they received funds from Lenders 1 and 2:

| Business Name | Lender | Business Type | Business Owner | Date Funds Received | Approx. Amount |
|---|---|---|---|---|---|
| Divine-Seven El | Lender 1 | Building Equipment | EL | 6/30/20 | $20,525 |
| Divine-Seven El | Lender 1 | Building/Equipment Contractors | EL | 2/17/21 | $17,995 |
| Aziz Bey | Lender 2 | Management Consulting | A. BEY | 4/27/21 | $20,832 |
| Letez Bey Credit Bureaus | Lender 2 | Credit Bureaus | L. BEY | 5/20/21 | $19,245 |
| Zakar Ali Barbershop | Lender 2 | Barber Shop | ALI | 6/28/21 | $20,832 |

All in violation of Title 18, United States Code, Section 1349.

7

## COUNTS TWO THROUGH EIGHT
*Wire Fraud*

32. Paragraphs 1 through 31 are realleged and incorporated here.

### *The Scheme to Defraud*

33. Beginning in at least June 2020 and continuing through at least July 2021, in the State and Eastern District of Wisconsin and elsewhere,

AZIZ HASSAN BEY, a/k/a "CHAUNCEY HOOKS,"
LETEZ OSIRIS BEY, a/k/a "DEVONNE ROBINSON,"
MINISTER ZAKAR ALI, a/k/a "ANTHONY ALLEN," and
DIVINE-SEVEN EL, a/k/a "MARK STEVENS" a/k/a "MARK NESBITT,"

and others known and unknown to the Grand Jury, and aided and abetted by each other, with intent to defraud, knowingly devised, participated in, and carried out a scheme to defraud and obtain money and property by means of materially false and fraudulent pretenses and representations (the scheme), which scheme is described more fully below.

### *Manner and Means of the Scheme*

34. It was the purpose of the scheme for defendants A. BEY, L. BEY, ALI, EL, and others known and unknown to the Grand Jury, to unlawfully enrich themselves by submitting false and fraudulent EIDL loan applications to the SBA representing that the applicant entities were functional and operational businesses and making false representations regarding the companies' number of employees, gross revenues, and cost of goods sold.

35. It was further part of the scheme that EIDL loan applications falsely claimed that the applicant company was in operation as of February 15, 2020, when in fact it was not.

36. It was further part of the scheme that EIDL loan applications falsely certified that the loan applicant company employed individuals and had gross revenue and cost of goods sold amounts for the twelve months prior to January 31, 2020.

8

37. In fact, none of the businesses had paid wages and filed federal employment tax returns (Forms 941) in any quarter of 2019 and the first quarter of 2020, meaning that they had no employees for which taxes were paid during that period.

38. It was further part of the scheme that after the EIDL loans were deposited into the applicant's bank account, defendants A. BEY, L. BEY, ALI, and EL transferred and directed the transfer of loan proceeds to each other and to others associated with the Consulate.

39. It was further part of the scheme that defendants A. BEY, L. BEY, ALI, and EL fraudulently obtained approximately $774,800 in EIDL loan proceeds.

*Executions*

40. On or about the following dates, in the State and Eastern District of Wisconsin and elsewhere, defendants A. BEY, L. BEY, ALI, and EL, aided and abetted by each other and by others known and unknown to the Grand Jury, knowingly executed and attempted to execute the above-described scheme to defraud by committing and willfully causing others to commit the following acts, each of which constituted an execution of the fraudulent scheme:

| Count | Defendant | Approx. Date | Interstate Wire Transmission |
|---|---|---|---|
| 2 | EL | June 24, 2020 | Email from El to A. Bey with link to IRS Form 1099 |
| 3 | L. BEY | June 25, 2020 | Online submission of application for EIDL loan in the name of Devonnes Consulting and listing Consulate Milwaukee address |
| 4 | A. BEY | July 7, 2020 | Wire transfer of approximately $108,600 in EIDL loan proceeds from the SBA to A. BEY's account ending in x9270 at Bank 1 |
| 5 | A. BEY | July 8, 2020 | Wire transfer of $2,500 using Venmo from A. BEY's account ending in x9270 at Bank 1 to EL's account |
| 6 | EL | August 5, 2020 | Email from EL to ALI with attached documents for Drummond Hills Corp. |
| 7 | ALI | August 6, 2020 | Email from ALI to L. BEY with attached documents for Drummond Hills Corp. |
| 8 | A. BEY | August 10, 2020 | Wire transfer of approximately $125,100 in EIDL loan proceeds from the SBA to A. BEY's account ending in x2903 at Bank 2 |

Each in violation of Title 18, United States Code, Sections 1343, 2(a), and 2(b).

9

# COUNTS NINE THROUGH ELEVEN
*Mail Fraud and Wire Fraud*

41. Paragraphs 1 through 40 are realleged and incorporated here.

## *The Scheme to Defraud*

42. Beginning in at least May 2020 and continuing through at least July 2021, in the State and Eastern District of Wisconsin and elsewhere,

AZIZ HASSAN BEY, a/k/a "CHAUNCEY HOOKS,"
LETEZ OSIRIS BEY, a/k/a "DEVONNE ROBINSON," and
MINISTER ZAKAR ALI, a/k/a "ANTHONY ALLEN,"

and others known and unknown to the Grand Jury, and aided and abetted by each other, with intent to defraud, knowingly devised, participated in, and carried out a scheme to defraud and obtain money and property by means of materially false and fraudulent pretenses and representations (the scheme), which scheme is described more fully below.

## *Manner and Means of the Scheme*

43. It was the purpose of the scheme for defendants A. BEY, L. BEY, ALI, and others known and unknown to the Grand Jury, to unlawfully enrich themselves by submitting false and fraudulent applications and claims for UI to state SWAs falsely representing that they were qualified to receive UI from those states.

44. It was part of the scheme that A. BEY, L. BEY, and ALI applied for UI from the State of Georgia. A. BEY and ALI received approximately $33,680 and $43,525 from the GDOL.

45. It was further part of the scheme that A. BEY and L. BEY applied for UI from the State of Wisconsin.

46. It was further part of the scheme that applications to the States of Illinois and California were submitted in the names of other individuals from August through December 2020. Funds for those other individuals were loaded onto debit cards that were mailed from banks to the

Consulate Milwaukee address and addresses in Illinois used by ALI and the Consulate. In September 2020 and December 2020, L. BEY made withdrawals using those cards.

*Executions of the Scheme*

47. On or about the following dates, in the State and Eastern District of Wisconsin and elsewhere, defendants A. BEY, L. BEY, and ALI, aided and abetted by each other and by others known and unknown to the Grand Jury, did knowingly execute and attempt to execute the above-described scheme to defraud by committing and willfully causing others to commit the following acts, each of which constituted an execution of the fraudulent scheme:

| Count | Defendant | Approx. Date | Mailing and Interstate Wire Transmission |
|---|---|---|---|
| 9 | A. BEY | June 19, 2020 | Online submission of UI claim to GDOL |
| 10 | ALI | July 27, 2020 | Online submission of UI claim to GDOL |

Each in violation of Title 18, United States Code, Sections 1343, 2(a), and 2(b).

| Count | Defendant | Approx. Date | Mailing and Interstate Wire Transmission |
|---|---|---|---|
| 11 | L. BEY | September 5, 2020 | Mailed debit card ending in x1442 from Bank 3 to the Consulate Milwaukee address |

In violation of Title 18, United States Code, Sections 1341, 2(a), and 2(b).

# COUNTS TWELVE THROUGH FOURTEEN
*Mail Fraud*

48. Paragraphs 1 through 47 are realleged and incorporated here.

### *The Scheme to Defraud*

49. Beginning in at least January 2018 and continuing through at least October 2021, in the State and Eastern District of Wisconsin and elsewhere,

AZIZ HASSAN BEY, a/k/a "CHAUNCEY HOOKS,"
ZAKAR ALI, a/k/a "ANTHONY ALLEN," and
DIVINE-SEVEN EL, a/k/a "MARK STEVENS" a/k/a "MARK NESBITT,"

and others known and unknown to the Grand Jury, and aided and abetted by each other, with intent to defraud, knowingly devised, participated in, and carried out a scheme to defraud and obtain money and property by means of materially false and fraudulent pretenses and representations (the scheme), which scheme is described more fully below.

### *The Purpose of the Scheme*

50. It was the purpose of the scheme for defendants A. BEY, ALI, and EL, and others known and unknown to the Grand Jury, to defraud Lenders 3 and 4 and the Wisconsin Department of Motor Vehicles (DMV) by obtaining possession of valuable motor vehicles, submitting false information to the Wisconsin DMV to remove liens held by lenders from the vehicles' titles, and keeping and re-selling the vehicles without repaying the loan amounts owed to the lenders.

### *Manner and Means of the Scheme*

51. It was part of the scheme that defendants A. BEY, ALI, EL, and others obtained possession of vehicles that had liens held by lenders related to loans on the vehicles.

52. It was further part of the scheme that A. BEY, ALI, EL, and others submitted and caused to be submitted materially false and misleading statements and omissions to the Wisconsin DMV, by omitting loan information in Applications for Certificate of Title and submitting false documentation purporting that the liens on vehicles had been released.

53. As a result of the defendants' false and misleading statements and omissions, the Wisconsin DMV issued titles to A. BEY and the Consulate for multiple vehicles free and clear of any liens held by lenders.

54. It was further part of the scheme that, after obtaining from the Wisconsin DMV free-and-clear titles for vehicles, A. BEY, ALI, EL, and others sold vehicles to third parties and kept them for their own use without repaying the lenders.

55. It was further part of the scheme that, after vehicles were sold, A. BEY, ALI, EL, and others transferred and directed the transfer of proceeds to each other and others associated with the Consulate.

*Executions*

56. On or about the following dates, in the State and Eastern District of Wisconsin and elsewhere, defendants A. BEY, ALI, and EL, aided and abetted by each other and by others known and unknown to the Grand Jury, for the purpose of executing the above-described scheme to defraud, knowingly caused the below-described mail matter to be sent to the Consulate Milwaukee address by the United States Postal Service:

| Ct. | Defendant | Approx. Date | Mailing |
|---|---|---|---|
| 12 | A. BEY & EL | July 2, 2019 | Mailed title for 2018 Land Rover, VIN ending in x1108 |
| 13 | A. BEY & ALI | December 8, 2020 | Mailed title for 2015 BMW, VIN ending in x1351 |
| 14 | A. BEY & ALI | December 8, 2020 | Mailed title for 2019 Chevrolet Corvette, VIN ending in x0760 |

Each in violation of Title 18, United States Code, Sections 1341 and 2(a).

## COUNTS FIFTEEN THROUGH EIGHTEEN
*Unlawful Monetary Transactions*

57. Paragraphs 1 through 56 are realleged and incorporated here.

58. On the dates specified below, in the State and Eastern District of Wisconsin and elsewhere,

AZIZ HASSAN BEY, a/k/a "CHAUNCEY HOOKS," and
DIVINE-SEVEN EL, a/k/a "MARK STEVENS" a/k/a "MARK NESBITT,"

aided and abetted by each other and by others known and unknown to the Grand Jury, knowingly engaged in, attempted to engage in, and caused others to engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, knowing that such transaction involved criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349, wire fraud, in violation of Title 18, United States Code, Section 1343, and mail fraud, in violation of Title 18, United States Code, Section 1341:

| Count | Defendant | Approximate Date | Description of Transaction |
|---|---|---|---|
| 15 | A. BEY | January 27, 2020 | Cashier's check in the amount of $43,000 from A. BEY's account at Bank 1 deposited to EL's account |
| 16 | EL | July 29, 2020 | Check in the amount of $60,000 withdrawn from EL's account ending in x8491 at Bank 5 and deposited to EL's account at Bank 3 |
| 17 | A. BEY | August 10, 2020 | Bank check for approximately $30,122 to Adam Auto Group withdrawn from A. BEY's account at Bank 1 for purchase of a Maserati vehicle |
| 18 | EL | September 23, 2020 | Wire transfer in the amount of $50,000 from EL's account at Bank 3 to Ocean Mazda for purchase of a Porsche vehicle |

Each in violation of Title 18, United States Code, Sections 1957 and 2(a).

14

## FORFEITURE ALLEGATIONS

1. Upon conviction of the mail fraud, wire fraud, and conspiracy to commit wire fraud offenses, in violation of Title 18, U.S. Code, Sections 1341, 1343, and 1349, as set forth in Counts 1 through 14 of this Indictment, the defendants shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2), and Title 28, U.S. Code, Section 2461(c), any property, real or person, which constitutes or is derived from proceeds traceable to the offenses. The property includes, but is not limited to, a sum of money reflecting the proceeds defendants obtained from the offenses.

2. Upon conviction of the unlawful monetary transaction offenses, in violation of Title 18, United States Code, Section 1957, as set forth in Counts 15 through 18 of this Indictment, the defendants shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of said violations and any property involved in the offenses, including but not limited to a sum of money representing the amount of proceeds obtained as a result of the offenses.

3. If any of the property described above, as a result of any act or omission by the defendants: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third person; has been placed beyond the Court's jurisdiction; has been substantially diminished in value; or has been commingled with other property that cannot be subdivided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

A TRUE BILL:

FOREPERSON

Dated: 8-23-22

*signature*
fN RICHARD G. FROHLING
United States Attorney